## Bell Estate

*Sykes & Aikman*, for petitioner.

*Brown & Dennison*, for respondent.

*Clemens Simon*, for intervenor.

MORRIS, P. J., February 24, 1953.—This matter comes before the court on petition and answer. From the record and from the allegations in the petition and answer it appears that Byron E. Bell died intestate, May 2, 1948, leaving to survive him as his sole heirs-at-law, his parents, William H. Bell and Helena A. Bell. Letters of administration on his estate were issued to J. E. McCreight, who duly entered upon his duties of settling the estate and on December 29, 1951, filed his first and final account.

On July 14, 1952, the auditor, appointed by the court "to make distribution of the funds remaining in the hands of the accountant to creditors and heirs at law", filed his report. No exceptions were filed to the report and, accordingly, absolute confirmation thereof followed as provided by rule of court.

The auditor, in distributing the balance for distribution, $3,010.57, made the following award:

"To Helena A. Bell, one-half of $3010.57 . . $1505.29

To William H. Bell, one-half of $3010.57, which sum the accountant shall pay to William H. Bell's personal representative ............................. 1505.29"

The Commonwealth of Pennsylvania, Department of Public Assistance, in its petition avers, inter alia,

"1. That Helena A. Bell . . . is a public charge and is presently receiving public assistance and has at all times since May 18, 1948, been receiving public assistance from your petitioner.

"2. That the amount of the assistance received by the said Helena A. Bell, as public assistance and as Old Age Assistance, from May 18, 1948 to April 5, 1952, is as follows . . . $1,669.20.

"3. That your Petitioner . . . paid to William H. Bell . . . Old Age Assistance from May 18, 1948 to March 22, 1950 . . . $684.80."

William H. Bell died, intestate, March 29, 1950, leaving as his sole heirs, his wife, Helena A. Bell, and a son, W. O. Bell. However, only recently (since the filing of the Commonwealth's petition) have letters of administration been issued on this latter estate.

The Commonwealth is asking that it be substituted as claimant for (the distributive shares awarded) Helena A. Bell and the personal representative of the estate of William H. Bell, ". . . in accordance with the Support Law".

Section 5 of the Act of June 24, 1937, P. L. 2045, subsecs. (a), (b) and (c) reads as follows:

"(a) Whenever any person shall become a public charge or receive public assistance, the public body or public agency caring for or furnishing such assistance may sue for and recover any sum of money due such person;

"(b) Such suit shall be brought in the name of such person for the use of such public body or public agency. Proof that the person to whom such money is due became a public charge, or was publicly assisted, shall be conclusive of the right to recover whatever may be legally due such person. If the amount due shall have been reduced to judgment, the public body or public agency may be substituted as plaintiff in the judgment. If the sum due is founded on an order or decree of court, the public body or public agency shall have the right to recover the same; . . .

"(c) Should such person become self-supporting, or be supported by a relative or friend, then any moneys

recovered and not expended in the care or assistance of such person shall belong to him. In case of his death, moneys not expended for his care, assistance and burial shall belong to his estate."

Respondents, in their answer, admit to having received assistance from the Department of Public Assistance but never kept any record of the amounts and for such reason "demand proof thereof for the reason that they are without such knowledge or information because the means of proof are within the exclusive control of said Department of Public Assistance."

In further answer to the petition, respondents aver that this court "is without jurisdiction . . . to enforce payment of said two unliquidated claims . . .", and that respondents, "are entitled to their day in the Court of Common Pleas of said County, which is the only tribunal clothed with authority to determine the amount of such alleged claims and the liability of said alleged debtors therefor; that the said Department of Public Assistance presented no claim against the Estate of the said Byron E. Bell, deceased, at the time of the audit thereof, or against the distributive shares of the said Helena A. Bell or the Estate of William H. Bell, deceased . . .; that said alleged claims are not supported or secured by notes, judgments or other obligations, expressed or implied; . . . that said Auditor's report and schedule of distribution has been confirmed . . . in the manner provided by the Rules of Court; that neither the said Commonwealth of Pennsylvania nor the Department of Public Assistance thereof, in the absence of a liquidated claim or claims, reduced to judgment or judgments, are interested parties entitled to be heard or to interfere with the distribution of the Estate of the said Byron E. Bell, deceased, to the parties legally entitled thereto, and that

this Court is without jurisdiction under the facts to grant the prayer of said petition".

Before a hearing on such petition and answer, the First National Bank of Reynoldsville presented its petition to the orphans' court, averring, inter alia, that it is plaintiff in a judgment, entered in the Court of Common Pleas at August term, 1948, no. 56, against Helena A. Bell; that, on July 16, 1952, it caused to be issued a writ of attachment execution on such judgment, naming J. E. McCreight, administrator of Byron E. Bell, deceased, as garnishee, attaching "all the distributive share due or belonging to the said Helena A. Bell in the hands or possession of J. E. McCreight, Administrator of the Estate of Byron E. Bell, deceased;" and that the granting of the prayer of the Commonwealth and its Department of Public Assistance, "will adversely affect it", and "deprive it of property without due process of law".

The prayer of such petition is for "an order or decree subordinating the claim of the Commonwealth of Pennsylvania to (its) writ of attachment . . . insofar as it pertains to any funds due or owing to the said Helena A. Bell now in the hands of J. E. McCreight, Administrator of the Estate of Byron E. Bell, deceased". Upon presentation of such petition, the court granted a rule upon the Commonwealth, its Department of Public Assistance, J. E. McCreight, administrator, Helena A. Bell and Guy S. Mamolito, Esq., auditor, to show cause why the prayer thereof should not be granted. None of the respondents named therein filed an answer to such rule.

At a hearing on the two petitions and such answer of Helena A. Bell and W. O. Bell, counsel for the Commonwealth stated that so much of the prayer of its petition as related to the award of $1,505.28 to "William H. Bell's personal representative" was withdrawn.

The only question now for determination is whether petitioner is entitled, under section 5, supra, to "be substituted as claimant for Helena A. Bell" and to an order "that the amount awarded to the said Helena A. Bell . . . be marked to the use" of petitioner, or "in the alternative, that the petitioner be substituted as claimant for the said Helena A. Bell".

The Department of Public Assistance was created by the Act of June 24, 1937, P. L. 2045, 62 PS §1972, as one of the administrative departments of the Commonwealth, charged with the duty of administering and carrying out the provisions of the Public Assistance Law of June 24, 1937, P. L. 2051, 62 PS §2501. The Public Assistance Law detailed the powers and duties of the Department of Public Assistance and established the classes of beneficiaries eligible to receive assistance from public funds. By the amendatory Act of May 21, 1943, P. L. 434, sec. 1, it was "declared to be the legislative intent that the purpose of this act (the Public Assistance Law) is to promote the welfare and happiness of all the people of the Commonwealth, by providing public assistance to all of its needy and distressed".

The title of the Support Law of June 24, 1937, P. L. 2045, reads as follows:

"Relating to the support of indigent persons publicly cared for or assisted; providing for the support of such persons by certain relatives, and for the recovery of public moneys expended for care and assistance from the property and estates of such persons; providing for guardians of the person and property of such persons; providing for the arrest and seizure and sale of the property of deserters; and providing procedure."

From a careful reading of the two acts we can come to no other conclusion than that they must be construed to be parts of one general system of administra-

tion of assistance by the Commonwealth. Section 62 of the Statutory Construction Act, 46 PS §562, states that: "Laws in pari materia shall be construed together, if possible, as one law."

Respondents' counsel contend that since Mrs. Bell's assistance was granted to her in a form denoted "Old Age Assistance", it placed her in a group or category separate and apart from the other recipients of the Commonwealth's bounty, insofar as it relates to the matter of procedure to be followed in securing substitution and recovery as provided in section 5, and in support thereof cite section 1 of the Public Assistance Act of May 1, 1945, P. L. 370, 62 PS §2517, Definitions —where "General Assistance" is defined as meaning "assistance provided from or with State and/or Federal funds only to persons entitled to assistance, other than dependent children, *aged persons* and blind persons; and that the right of the Commonwealth to recover is limited to persons *who shall become a public charge or receive public assistance.* And since "general assistance" seems to exclude . . . aged persons . . . the remedy provided in section 5 is not available to the Commonwealth, unless and until the Commonwealth has reduced its claim to judgment in the manner provided by law.

This argument is not sound. The act in question plainly states:

"(3). 'Public assistance' shall be construed to mean 'general assistance' and 'assistance'. Persons receiving 'old age assistance' fall within that class defining persons receiving 'assistance'."

Furthermore, by reference to the Public Assistance Law (62 PS §2509) relating to eligibility for assistance, as amended, it clearly states:

"Except as hereinafter specifically otherwise provided in the case of pensions for the blind, *all persons of the following classes* . . . shall be eligible to receive

*assistance,* in accordance with rules, regulations and standards established by the Department of Public Assistance. . . .

"(b) Aged persons . . ."

Counsel for respondent concede that Blum's Estate (No. 1), 38 D. & C. 588 (1939), correctly interprets the law, as far as it goes. In an examination of that case we find that it differs from the instant case in but one respect, the fixing or liquidation, by judgment or otherwise, of the amount of the Commonwealth's claim against the indigent person. In the Blum case, upon the filing of the petition, the respondent filed an answer in the nature of a demurrer raising only the question of jurisdiction of the orphans' court to determine the rights of the Commonwealth against the respondent and to grant the relief prayed for—substitution in the judgment or award. By the nature of the pleadings such amount was admitted. In the instant case respondent, in her *answer on the facts,* "admitted . . . she received assistance from the said Department of Public Assistance . . ." and in so doing and without further proof, brought herself within that provision of section 5, subsec. (*b*) . . . :"Proof that the person to whom such money is due became a public charge, or was publicly assisted, shall be conclusive of the right to recover whatever may be legally due such person."

Section 5 is in no manner dependent upon section 4 to give it effect. It is a remedy, independent and distinct. There is no requirement in the section itself, directly or by implication, that requires the Commonwealth to reduce its claim to judgment before it petitions for substitution in the judgment. In fact, a reading of subsection (*c*), supra, negatives the idea that a judgment of the Commonwealth is required or contemplated. It speaks of money recovered but unexpended and how such money shall be disposed of in event the assistance recipient shall become self-supporting or be

supported by a relative or friend or die while receiving assistance.

We construe section 5, as did Judge Gross in Blum's Estate (No. 1), supra, as being a new and additional remedy . . . a remedy that has the "effect of an attachment execution, without the delay caused by its cumbersome procedure." It permits the Commonwealth to possess itself immediately of funds in any amount due the indigent person that otherwise might be turned over to the assistance recipient and dissipated, to the loss of the Commonwealth.

We believe the intent of the legislature, as expressed in section 5, is clear and unambiguous. The end result unquestionably favors the public interest. However, in ascertaining the legislative intent of an act, the presumption is:

"(5) That the Legislature intends to favor the public interest as against any private interest": Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 52, 46 PS §552.

Again, in ascertaining legislative intent, section 51 of the Statutory Construction Act, supra, 46 PS §551, states, inter alia.

"When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering, among other matters, . . . (3) the mischief to be remedied; (4) the object to be attained; . . ."

The single reason . . . preventing the assistance recipient from receiving the moneys and dissipating them to the possible loss of the Commonwealth is, without more, a worthy "object to be attained" and the "remedying of a real mischief". It effectually and simply provides a remedy which, prior to its enactment, may have cost the Commonwealth many thousands of dollars.

It is conceded by Commonwealth counsel that the attachment execution of the First National Bank of

Reynoldsville, predicated on its judgment of record in the Court of Common Pleas at August term, 1948, no. 56, against Helena A. Bell, is superior to the claim of the Commonwealth, and the granting of the right of substitution in the fund would be subject to the prior right or lien of the bank.

For the foregoing reasons, we make the following

### Order

And now, February 24, 1953, it is hereby ordered and decreed that in the award made to Helena A. Bell, in the schedule of distribution of the auditor in his amended report in the estate of Byron E. Bell, deceased, filed July 21, 1952, in the amount of $1,505.29, the Commonwealth of Pennsylvania, Department of Public Assistance, is substituted as claimant therein:

Provided, however, that the substitution above directed shall be subordinated to the rights of the First National Bank of Reynoldsville, Pa., in its attachment execution, founded on its judgment of record in the Court of Common Pleas at August term, 1948, no. 56, and

That J. E. McCreight, administrator of the estate of Byron E. Bell, deceased, is ordered and directed to make distribution in accordance with this decree.